# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**CHARLES ISAAC WILSON, JR.**                                                   **PLAINTIFF**
**ADC #079592**

**V.**                          **NO. 4:23-cv-00522-JM-ERE**

**DEXTER PAYNE,** *et al.*                                                          **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections

This Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. Your objections must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Moody can adopt this Recommendation without independently reviewing the record.

### II.   Background

*Pro se* Plaintiff Charles Isaac Wilson, Jr., an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc. 2*. Mr. Wilson alleges that, on June 14, 2022, while he was housed at the ADC's Tucker Unit, inmate Randall Reed attacked him. He claims that the assault occurred because

of inadequate security. ADC Chaplain William Pearson is the only remaining Defendant.[1]

Defendant Pearson has now filed a motion for summary judgment, a supporting brief, and a statement of facts arguing that Mr. Wilson failed to fully exhaust his administrative remedies before filing this lawsuit. *Docs. 40, 41, 42*. Mr. Wilson has not responded to Defendant Pearson's motion, and the time for doing so has passed. *Doc. 45*. The motion is now ripe for review.

For the reasons stated below, Defendant Pearson's motion for summary judgment (*Doc. 40*) should be granted.

### III. Discussion

#### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*,

---

[1] The Court previously dismissed Mr. Wilson's claims against Defendants Jackson, Taylor, Payne, Norris, Page, Clark, and Green, as well as the Doe Defendants. *Docs. 15, 34*.

340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). By law, Mr. Wilson had to follow the ADC's requirements for raising and exhausting his pending claims before bringing this action.[2]

### B.   The ADC Grievance Procedure

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34. *Doc. 40-2*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising the claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate

---

[2]There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejects the appeal. *Id. at 14*.

To complete the exhaustion process before bringing this lawsuit, Mr. Wilson was required to present his claims against Defendant Pearson in a timely filed grievance and pursue all three steps of the ADC's grievance process until he received a decision on the merits at the final stage. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (a prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits.").

**C.     Mr. Wilson's Grievance History**

Defendant Pearson submits the affidavit of Terri Grigsby Brown, the ADC Inmate Grievance Supervisor, in support of his motion. *Doc. 40-1*. Ms. Grigsby states that, based on a review of Mr. Wilson's grievance history, she only found one grievance relevant to the claims raised in this lawsuit, TU-20-559. *Id. at 6*.

In grievance TU-20-559, Mr. Wilson complains about the inmate attack that occurred on June 14, 2020. *Doc. 17-3 at 2*. In the grievance, Mr. Wilson states "it

was due to lack of security; inadequacy of security; mismanagement of security, and []wanton failure, refusal, deliberate, safe housing, safekeeping, and protection that caused and resulted in injury to my person." *Doc. 40-4 at 5*. Mr. Wilson does not reference Defendant Pearson by name or title in that grievance.[3]

In his amended complaint, Mr. Wilson alleges that Defendant Pearson, an alleged "ex-con" and member of the Aryan Brotherhood was the catalyst that emboldened inmate Reed to attack him. *Doc. 7 at 14-15*. He alleges that Defendant Pearson preached to inmates about how Jesus hates snitches, called Mr. Wilson a snitch, and informed his "house men" that Mr. Wilson snitched on him and encouraged them to "weed out the snitch." *Id. at 15*. Mr. Wilson fails to include any such allegations in grievance TU-20-559.

As a result, on this record, there is no genuine issue of material fact regarding Mr. Wilson's failure to exhaust his administrative remedies as to the claims raised against Defendant Pearson in this lawsuit, and Defendant Pearson is entitled to judgment as a matter of law.

---

[3] ADC officials rejected Mr. Wilson's grievance because it involved a "disciplinary matter." *Doc. 40-4 at 4*. Although, in grievance TU-20-559, Mr. Wilson complains that he was wrongfully disciplined for the June 14, 2020 incident, Mr. Wilson's primary complaint in that grievance was inadequate security. Accordingly, while the Court has concerns as to whether ADC official's rejection of this grievance was proper or rendered the grievance process unavailable to Mr. Wilson, Mr. Wilson did not raise any of his claims against Defendant Pearson in grievance TU-20-559. Accordingly, any such discussion is irrelevant to Mr. Wilson's claims against Defendant Pearson.

## IV. <u>Conclusion</u>

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Pearson's motion for summary judgment (*Doc. 40*) be GRANTED.

2. Mr. Wilson's claims be DISMISSED, without prejudice, based on his failure to fully exhaust his administrative remedies.

3. The Clerk be instructed to close this case.

DATED 13 March 2024.

_____
UNITED STATES MAGISTRATE JUDGE